# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH RAUL CONTRERAS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>F. CHAVEZ, Warden,<br><br>　　　　　Respondent. | CASE NO. 1:13-CV-623-AWI-SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENIAL OF THE PETITION |

Petitioner is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. The petition, answer, and reply are presently before the Court. Docs. 1, 13, 16. For the following reasons, the Court recommends that the petition be denied.

**I.    BACKGROUND**

On August 15, 2005, around 6 p.m. a Kern County Sheriff's Deputy arrested a Mr. Moore at a house in Bakersfield.[1] At the central receiving facility, the deputy conducted several sobriety tests and took a sample of Moore's urine for drug and alcohol testing. Moore's demeanor rapidly cycled between cooperative and uncooperative. The deputy told the booking officer that Moore was mentally unstable. Later, the urine test was found to be negative for drugs and alcohol.

Moore was sent to a nurse's station and was uncooperative. Two officers pepper-sprayed him. Officers attempted to handcuff him while he was face down on the floor. Eventually six officers were on top of a struggling Moore. Officers handcuffed him behind his back and placed

---

[1] This brief factual background is summarized from the California Court of Appeals opinion.

1   leg shackles on his ankles. They removed the handcuffs and put waist chains on, which held his
2   hands close to his sides. Moore was ordered to be placed in a cell with padded walls. He was
3   inspected by a nurse who observed redness from the restraints, but no significant injuries.

4         Around 7 p.m. a shift change occurred. Officers removed Moore from the padded cell to
5   complete the booking process. He was cooperative. The officers removed the leg irons and
6   photographed him. Around 7:35, Moore was struggling with six or seven officers, including
7   Petitioner, in the dress-out area, the area where inmates change into jail clothes. In this struggle,
8   officers were trying to hold Moore down and put side-bar restraints on him, which would keep his
9   hands at his sides. Officers testified that Moore had no restraints on at the beginning of the
10  struggle. Sergeant Randall Holtz applied a carotid choke hold around Moore's neck from behind
11  causing Moore to lose consciousness for five to ten seconds. The officers put side bars and leg
12  irons on him. Blood was coming from Moore's eye, ear, and mouth, and he was missing a tooth. A
13  nurse checked Moore's vital signs and said he was okay. Sergeant Holtz ordered Petitioner and
14  another officer to take Moore by car to a hospital according to their policy following a carotid
15  hold.

16        Moore was uncooperative on the way to the car, refusing to walk and grabbing a door
17  handle without letting go. Still restrained in side bars and leg irons and refusing to walk, fourteen
18  officers went with Moore to the garage. Moore resisted being placed inside the vehicle, stiffened
19  his body, lodged his feet in a wheel well, and held on to the exterior in the car. After at least four
20  separate attempts to get him in the car. Sergeant Holtz hit Moore with a baton two to five times in
21  the legs. An officer tripped Moore and he landed on his back on the concrete.  An officer kicked
22  him twice in the center of his face and once in his upper chest. Another officer got on top of
23  Moore and punched him about three times in the kidneys. Petitioner stood over Moore and struck
24  him once in the face with a baton. Another officer stood with her boot on Moore's collarbone as
25  he lay on the floor. After the beating, Moore's eyes were swollen shut and his face was covered in
26  blood. An ambulance was called.

27        Around 10:26 p.m. a Bakersfield City Fire Department Truck was the first to arrive. Scott
28  Dragoun, the engineer and an EMT, testified that Moore was on his back, shacked in leg irons and

side bars with two officers standing on the chains. Dragoun observed bruising, swelling, and redness from Moore's head to toes. Moore's face was puffy and he had linear bruises on his torso and thighs consistent with baton strikes. Dragoun found no indications of internal head injury. Moore was alert and oriented, his pupils responded normally to light, his pulse, respiration and temperature were normal. An ambulance arrived two or three minutes after the fire truck. Brooke Brown, an EMT, along with a paramedic, placed the gurney beside Moore, who began to resist being moved by raising his chest and drawing his legs toward his chest. He was still restrained and was not punching or kicking officers. He also avoided being strapped to the gurney by thrashing about. Several officers jumped Moore, punching him in the testicles and groin. An officer and Brown said to stop because Moore would not stop moving while being hit in that manner. An officer secured Moore to the gurney by attaching a restraint to the gurney with handcuffs.

While ambulance remained in the parking garage, Petitioner stood at the head of the gurney. He held down Moore's head with one hand and punched him in the face with the other. Dragoun testified that Petitioner struck Moore's head from ten to twelve inches above with his forearm and fist. Petitioner struck Moore more than three times, making contact with the top of his head, his nose, and his neck. The strike to Moore's nose caused it to bleed profusely. At one point, Dragoun testified that he saw Petitioner's other hand covering Moore's mouth and nose for about twenty seconds and stated sarcastically that "if you cover his mouth and his nose, he'll stop resisting." Petitioner punched Moore in the face several times with one hand while covering his mouth and nose with the other. Moore was still trashing about. The fire department captain and Brown also saw another officer, Lindini, applying force to Moore's head and neck, pushing his forearm with solid force across the side of the face, cheek, and neck area, forcing Moore's face to the right. Brown saw that Moore was not breathing. Petitioner and Lindini were at the head of the gurney. Brown told Lindini to let go, but he did not. The third time, he let go. At about this time, the officers had succeeded in buckling the gurney straps onto Moore's body and stepped away from the gurney. Moore's pulse was faint and then stopped. Emergency personnel performed CPR. Moore was loaded into the ambulance and taken to the hospital. During the five-minute drive to the hospital, Moore's pulse was restored. Hospital personnel worked on stabilizing him.

1  Brown observed that Moore's injuries were worse than when she first arrived and found Moore on
2  the floor. His eyes were swollen shut, his face was covered in blood, and blood was coming from
3  his nose and ears. An officer testified that Petitioner told her that Petitioner punched Moore every
4  time Moore struggled or tried to raise himself. Moore was found to be brain dead and removed
5  from the respirator and died on August 21, 2005, six days after his arrest.

6  Dr. Debra Hanks performed the autopsy and testified that the cause of death was head and
7  neck injuries due to blunt force trauma. Blood was present at the base of the skull, in the region
8  considered the brain stem. Dr. Hanks found that the brain had experienced a cutoff of blood supply
9  and lack of oxygen and the brain was swollen. These conditions were caused by the blunt force
10 trauma to the head and neck. Dr. Hanks testified that Moore's injuries with consistent with the
11 type of force applied by Petitioner while Moore was on the gurney. Petitioner had held his head to
12 one side with one hand and punched his head and neck with the other. Dr. Hanks testified that the
13 turned head exposed the area of the junction of head and spinal cord and created stress at the base
14 of the skull at the top of the spinal cord and that Petitioner's actions would cause injury to the
15 neural tissue. Dr. Hanks also testified that Moore's death was multifactorial and was not able to
16 attribute his death to any one traumatic injury or assign percentages of causation to those injuries.
17 She testified that damage to the brain stem can cause breathing to stop.

18 Dr. Frank Sheridan testified as an expert for the prosecution. He opined that the cause of
19 death was blunt force trauma to the brain stem. He opined that the impacts damaged the brain
20 stem, which caused respiratory failure, which contributed to the oxygen cut-off to the brain. Dr.
21 Sheridan also could not say which traumatic injuries caused the brain stem injury. He testified that
22 it could have been to cumulative effect of a number of blows. However, he also testified that the
23 major injuries occurred after the fire and ambulance crews arrived, based on the paramedics
24 finding that Moore's mental state was normal upon their arrival. Dr. Sheridan testified that he did
25 not think Petitioner's actions while Moore was on the gurney would alone cause the brain stem
26 injury, but could have contributed to the cause of death.

27 Lieutenant Steven Hansen of the Kern County Sheriff's Department testified for the
28 prosecution as an expert on the use of force by officers. He testified that Petitioner's actions while

4

Moore was on the gurney would be unreasonable because the inmate was no threat under those circumstances and the officer's actions did nothing but punish him.

The jury found Petitioner guilty as charged of second degree murder and assault under color of authority. The Court imposed a sentence if fifteen years to life for second degree murder, and stayed a two-year sentence for assault under color of authority. Lindini, who was at the head of the gurney with Petitioner, was tried together with Petitioner and found guilty of involuntary manslaughter and assault under color of authority. The California Court of Appeal affirmed the conviction in a thorough opinion. The California Supreme Court denied further review. The California Supreme court also denied habeas relief on the merits.

In this petition, Petitioner argues 1) that the trial court's failure to instruct the jury on use of accomplice testimony violated his right to due process; 2) that his right to effective assistance of counsel was violated by trial counsel in its failure to request the jury instruction on accomplice testimony, failure to file a motion for change of venue, agreement to stipulate to a urine sample, and its potential bias in representing the Sheriff's Department; 3) that his right to effective assistance of counsel was violated by appellate counsel in its failure to brief the lack of accomplice testimony jury instruction, failure to brief ineffective assistance of trial counsel, failure to brief trial counsel's failure to file a motion for change of venue, and failure to obtain transcripts of voir dire and jury selection; 4) that his right to due process was violated by the cumulative impact of the errors; and 5) that his right to due process was violated because his conviction was not supported by sufficient evidence.

## II.   STANDARD OF REVIEW

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102. "A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Put another way, a federal court may grant habeas relief only when the state court's application of Supreme Court precedent was objectively unreasonable and no fair-minded jurist could disagree that the state court's decision conflicted with Supreme Court's precedent. *Williams*, 529 U.S. at 411.

### III. ACCOMPLICE TESTIMONY JURY INSTRUCTION

The trial court did not instruct the jury with CALCRIM 335 regarding use of accomplice testimony. This instruction directs the jury to view statements of an accomplice tending to incriminate the defendant with caution. CALCRIM 335. Petitioner argues that the failure to provide jury instruction regarding use of accomplice testimony violated due process. The California Superior Court rejected this claim in its order denying Petitioner's state habeas petition. The Superior Court noted that none of the witnesses had been charged with any crime because there was no evidence that they participated in the beatings or condoned Petitioner's conduct. They were admonished by the trial court concerning their right against self-incrimination, and decided to testify.

A challenge to a jury instruction solely as an error under state law is not cognizable in federal habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Federal habeas relief is available for instructional error only if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Therefore, if an error is found, the court also must determine that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946).

The Kern County Superior Court's opinion, undisturbed by the California Supreme Court, was not contrary to, and did not involve an unreasonable application of, clearly established Federal law. The trial court had no obligation to instruct the jury on accomplice testimony when none of the witnesses were charged as accomplices. Further, even if the jury should have received an instruction to consider accomplice or witness testimony with caution, there is no evidence that such an instruction would have an effect on the verdict. Various officers and medical personnel testified as to Petitioner's actions throughout the evening of Moore's arrest. Medical experts testified as to the cause of death occurring after the medical personnel arrived. The jury instruction does not require the jury to discount the accomplice testimony, only view it with caution. There is no evidence that the lack of jury instruction regarding accomplice testimony had an effect in determining the jury's verdict. Hence, the lack of instruction did not infect the trial such that the resulting conviction violates due process.

### IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that his constitutional right to effective assistance of counsel was violated in several ways, at both the trial and appellate level. He argues that trial counsel was ineffective in its failure to request the jury instruction on accomplice testimony, failure to file a motion for change of venue, for agreeing to stipulate to the victim's urine sample, and for a potential conflict of interest regarding the fee arrangement. He also argues that appellate counsel was ineffective for failing to brief and argue the lack of the accomplice testimony jury instruction, ineffective assistance of trial counsel, and trial counsel's failure to file a change of venue, and for failing to

augment the record to include transcripts of voir dire and jury selection. Petitioner's grounds for ineffective assistance of counsel are primarily arguments as to what counsel *could* have done differently, but Petitioner has not alleged any constitutional errors.

### A. Applicable Law

A habeas claim alleging appellate counsel was ineffective is evaluated under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). To establish ineffective assistance of counsel, petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-94, 697. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998). Habeas relief for ineffective assistance of counsel may only be granted if the state-court decision unreasonably applied the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419 (2009).

### B. Analysis

#### Trial Counsel's Failure to Request a Jury Instruction on Accomplice Testimony

Regarding the jury instruction on accomplice testimony, the Kern County Superior Court denied Petitioner's ineffective assistance of trial counsel claims on the merits. The Superior Court found that the jury instruction on accomplice testimony was unnecessary; thus, counsel's failure to request the instruction was not deficient and there was no showing of prejudice. The Court agrees that trial counsel was not ineffective for this reason, nor is it reasonably probable that the failure to request the jury instruction was prejudicial.

#### Trial Counsel's Failure to Request a Change of Venue

Petitioner argues that trial counsel should have requested a change of venue due to local media coverage of his case. The Superior Court reasoned that not requesting a change of venue was a reasonable tactical decision by counsel considering the joint trial with Lindini. The Superior Court also found that Petitioner could not show prejudice from the media coverage and that Plaintiff's allegations of prejudice are speculative. The Court agrees that trial counsel's failure to

file a change in venue did not fall below an objective standard of reasonableness and that Petitioner has not demonstrated that he was prejudiced by remaining in the venue where tried.

<u>Trial Counsel's Stipulating to the Urine Sample</u>

Petitioner argues that the urine sample obtained from Moore when he was booked could have been tainted because it was given to an officer in a paper cup and transferred to a vial for processing. Petitioner argues that trial counsel's stipulation to the sample at the preliminary hearing and trial counsel's failure to make a motion to exclude the sample were ineffective assistance of counsel. The Superior Court held that it is common practice to stipulate for the purposes of preliminary hearing and that there is no evidence that the admission of the urine sample and its results affected the outcome of the trial. This Court agrees. The toxicologist expressed no concern over the sample. Further, whether or not Moore was intoxicated at the time of booking is almost irrelevant to the ultimate conviction. Witnesses testified that Moore was very uncooperative, trashing about, and thought to be mentally unstable. Witnesses also testified that Moore was restrained in the gurney and unable to harm officers when the fatal injuries occurred. Petitioner cannot demonstrate that trial counsel's stipulation and failure to object to the admission of the urine sample had any effect on the jury's verdict.

<u>Trial Counsel's Conflict of Interest</u>

Petitioner alleges his attorney was retained on his behalf by his union, the Sheriff Officers' Union. The union paid his attorney's fees and retained counsel for other officers that were tried. Petitioner argues that this conflict of interest prevented him from receiving effective assistance of counsel. The Superior Court found that Petitioner did not meet his burden to show that the conflict of interest fundamentally undermined the attorney/client relationship –the record was devoid of evidence of union meddling and his claims were speculative. This Court also finds that Plaintiff has not met his burden to demonstrate that counsel's fee agreement with the union created a conflict of interest. The union paid Petitioner's attorney's fees. There is no evidence that the union interfered with or otherwise affected his representation. There is no evidence that Petitioner's counsel represented any witness who testified at Petitioner's trial. Petitioner argues that counsel's failure to call Sergeant Holtz, who administered the carotid hold and hit Moore several times with

a baton, is evidence of a conflict of interest. However, Holtz was not active during the most relevant time –while Moore was on the gurney. Other witnesses testified as to the events occurring before Moore was on the gurney and it may have been a tactical reason not to call Holtz to testify. Petitioner has not demonstrated that counsel's payment of fees by the union violated his constitutional right to effective assistance of counsel.

<u>Trial Counsel's Failure to Allow Petitioner to Testify</u>

To the extent that Petitioner argues that his attorney's advice to not to testify at trial was prejudicially ineffective, the Superior Court found that counsel's tactical decision was objectively reasonable in light of the overwhelming evidence of petitioner's guilt. This Court agrees that counsel's decision to not have Petitioner testify did not fall below an objectively reasonable standard and that Petitioner cannot demonstrate prejudice due to his failure to testify on his own behalf.

<u>Appellate Counsel's Failure to Brief All Issues</u>

The California Court of Appeal appointed an attorney to represent Petitioner on appeal. In the opening brief, appellate counsel argued that the evidence was insufficient to find implied malice and that Petitioner's conduct was a substantial factor in causing the victim's death. Petitioner now argues that appellate counsel was ineffective because he failed to brief the trial court's failure to instruct the jury on accomplice testimony, ineffective assistance of trial counsel, and trial counsel's failure to request a change of venue. The Superior Court found that appellate counsel need not raise meritless claims. As discussed in this order, each of Petitioner's claims that he argues appellate counsel should have briefed are untenable. Therefore, appellate counsel's failure to brief them was not objectively unreasonable and did not prejudice Petitioner.

<u>Appellate Counsel's Failure to Augment the Record with Transcripts of the Jury Selection Process</u>

Petitioner's outline mentions appellate counsel's failure to augment the record to include transcripts of the jury voir dire and jury selection; however, he does not brief the issue. It is unclear whether this claim has been exhausted and it is not addressed in Respondent's answer. Nevertheless, Petitioner has not demonstrated appellate counsel fell below an objective standard of reasonableness or that he was prejudiced by the lack of jury selection transcripts in the appellate

record.

Summary

The state court correctly found that each of Petitioner's allegations regarding ineffective assistance of trial and appellate counsel failed. For each of Petitioner's allegations, he has not meet the requisite showing that but for counsel's actions, the outcome of the trial would have been different. In order to show ineffective assistance of counsel, it is not sufficient for Petitioner to suggest actions that counsel could have possibly taken. According to *Strickland*, he must demonstrate that counsel's actions fell below an objectively reasonable standard, and that there is a reasonable probability that but for such errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). The Superior Court correctly applied the *Strickland* test to each of Petitioner's allegations of ineffective assistance of counsel in denying Petitioner's claims. Hence, the state court findings that Petitioner's trial and appellate counsel were not prejudicially ineffective were not contrary to, and did not involve unreasonable application of, clearly established federal law.

## V.    CUMMULATIVE ERROR

Petitioner argues that the cumulative impact of the errors denied him due process. As this Court finds that the Superior Court's rulings on the issues were not contrary to clearly established federal law, it follows that the Superior Court's rejection of Petitioner's cumulative error argument is not contrary to clearly established federal law.

## VI.    SUFFICIENCY OF THE EVIDENCE

Petitioner argues that the evidence was insufficient for findings of implied malice and that Petitioner's conduct was a substantial factor in causing the victim's death.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner "who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt" may bring a federal habeas claim. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The district court habeas review "does not determine whether

it is satisfied that the evidence established guilt beyond a reasonable doubt," it determines only "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992)(*quoting Jackson*, 443 U.S. at 319 (emphasis in *Jackson*)). The "only question" on federal habeas is review is whether the jury's finding "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Implied Malice

Petitioner argues that there was insufficient evidence to support a conviction of second degree murder on a theory of implied malice. Under California law, murder is "the unlawful killing of a human being […] with malice aforethought." Cal. Pen. Code § 187(a). Malice may be express or implied. Cal. Pen. Code § 188. It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Id. The California Supreme Court has found that "implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another." *People v. Knoller*, 41 Cal. 4th 139, 143 (2007). The jury instruction on implied malice requires four findings by the jury: 1) that the defendant intentionally committed an act; 2) the natural consequences of the act were dangerous to human life; 3) at the time he acted, he knew his act was dangerous to human life; and 4) he deliberately acted with conscious disregard for human life. CALCRIM 520.

The California Court of Appeal, in a decision undisturbed by the California Supreme Court, found that a reasonable jury could find each of the four elements of implied malice based on the evidence presented. First, there was no doubt that Petitioner committed intentional acts at the gurney when he held down Moore's head with one hand and punched his head and neck with the other, and when he covered Moore's mouth and nose with his hand. Second, the Court of Appeal found that the jury could reasonably find that the natural consequences of Petitioner's actions at the gurney were dangerous to human life. The nature of the beating, combined with the other injuries already sustained and the medical testimony support this finding. Third, the jury could reasonably infer that Petitioner knew of the danger to Moore's life. The Court of Appeal reasoned that it is likely that anyone inflicting an assault of this kind would have subjective

knowledge of its danger to life. The Court of Appeal also reasoned that Petitioner's braggadocio regarding the beating support an inference that he knew he was performing acts that were dangerous to human life. Fourth, the Court of Appeal found that the jury could reasonably find that Petitioner consciously disregarded the danger to Moore's life.

The relevant inquiry on habeas review is not whether a rational trier of fact could have found that Petitioner did not act with implied malice, but whether, after viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found that Petitioner did act with implied malice. The Court of Appeal correctly found that one could. As Petitioner argues, it may be possible that a juror could have found that Petitioner did not know of the danger of his actions to Moore's life. However, the Court of Appeal correctly found that a reasonable juror could have found that Petitioner, a trained officer, knew that holding Moore's head to the side and striking him in the head and neck, after already sustaining several punches and blows from Petitioner and others, would endanger Moore's life. The evidence supports a reasonable finding that Petitioner knew of the danger to Moore's life and that he consciously disregarded that danger.

Substantial Factor

Petitioner argues that there was insufficient evidence to support a finding that Petitioner's actions were a substantial factor in causing Moore's death. Petitioner argues that Moore had been assaulted and physically harmed by several other officers in the previous two or three hours, and at least three other officers at the time he stopped breathing. Petitioner argues that it cannot be determined that Moore would not have died if Petitioner had not struck him in the face. However, Petitioner does not articulate the correct standard.

Under California law, when the conduct of more than one person contributes concurrently as the proximate cause of death, "the conduct of each is a proximate cause of the death if that conduct was also a substantial factor contributing to the result." *People v. Sanchez*, 26 Cal. 4th 834, 847 (2001)(internal quotations omitted). Therefore, it is not required that a defendant's conduct is the "but for" cause or "primary" cause of death. *People v. Jennings*, 50 Cal. 4th 616, 643-44 (2010).

The Court of Appeal found that Petitioner's acts were a substantial factor in causing Moore's death. The Court of appeal noted that the fatal brain injuries were sustained after the emergency medical personnel arrived. The fatal beating took place on the gurney with Petitioner and Lindini participating. The medical testimony established that the blows like those delivered at the gurney were consistent with Moore's fatal injury and could be substantial factors in causing to Moore's death. The Court of Appeal found that the jury could reasonably find that Petitioner's actions were a substantial factor contributing to Moore's death based on this "ample evidence." The Court of Appeal applied the correct standard and correctly found that Petitioner's actions were a substantial factor in causing Moore's death. Petitioner's pointing fingers at other officers does not release him from liability. The medical experts testified that the beatings that caused Petitioner's fatal injury occurred after the emergency medical personnel arrived. The beatings suffered by Moore prior to their arrival may have been harsh, but they were not a cause of death. The autopsist testified that it was blunt force trauma to the head and neck, consistent with Petitioner's actions at the gurney, that caused Moore's death. The medical expert for the prosecution also testified that Petitioner's actions could have been the proximate cause of the fatal brain stem injury. Thus, the Court of Appeal's finding that there was substantial evidence to support a finding that Petitioner's actions were a substantial factor in causing Moore's death was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

**VII.   APPEALABILITY**

For the reasons set forth above, Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hence, the Court should decline to issue a certificate of appealability.

**VIII.   RECOMMENDATION**

Based on the foregoing, it is RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED;

2. Judgment be ENTERED for Respondent; and

3. The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court, serving a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 13, 2016**                             **/s/ Sandra M. Snyder**
                                                                    UNITED STATES MAGISTRATE JUDGE